STATE OF VERMONT
ENVIRONMENTAL COURT

| | | |
|---|---|---|
| In re: Lake Carmi, LLC | } | Docket No. 108-5-07 Vtec |
| Conditional Use Application | } | |
| | } | |
| Cameron Conditional Use Application | } | Docket No. 109-6-07 Vtec |
| | } | |

## Decision on Motion for Summary Judgment

These municipal appeals concern two neighboring properties on or near the shoreline of Lake Carmi in the Town of Franklin. One parcel is owned by Appellants James M. and Mary M. Cameron; the other property is held in the name of a limited liability company wholly owned and controlled by the Camerons. In each appeal, the owners seek municipal permit authority to convert the use of the existing seasonal residence on each property to year-round use.

In Docket No. 108-5-07 Vtec, Appellant-Applicant Lake Carmi, LLC appealed a decision of the Town of Franklin Zoning Board of Adjustment ("ZBA"), denying its conditional use application. In Docket No. 109-6-07 Vtec, Appellants-Applicants James and Mary Cameron appealed a ZBA decision denying their conditional use application. We consolidated these appeals for the purposes of pretrial motions and any hearing on the merits for three reasons: (1) the same general legal issue is posed in each appeal; (2) the lots involved are very close to each other; and (3) the Camerons are the sole owners of the other applicant: Lake Carmi, LLC.[1]

Lake Carmi, LLC and James and Mary Cameron (collectively, "Appellants") are represented here by Richard W. Darby, Esq. The Town of Franklin ("Town") is represented by Amanda S.E. Lafferty, Esq. Appellants have moved for summary judgment. The Town opposes Appellants' motion.

## Factual Background

For the purpose of this motion, the following facts are undisputed unless otherwise noted.

1. The Camerons own a parcel of land at 72 Dewing Road in Franklin, Vermont ("72 Dewing Rd."). This parcel is approximately 3,223 square feet in size and is improved with a single family seasonal dwelling. On its southwesterly side, 72 Dewing Rd. is bounded by the

---

[1] See Scheduling Order dated July 3, 2007. We also note that in each appeal, the Statement of Questions contains the same three issues preserved for our review.

State water body known as Lake Carmi; on its northeasterly side by Dewing Road; on its northwesterly side by lands now or formerly of Bissonette; and on its southeasterly side by lands now or formerly of Jette. Appellants' Ex. A.

2. Lake Carmi, LLC owns a parcel of land at 75 Dewing Road in Franklin, Vermont ("75 Dewing Rd."). This lot is approximately 12,800 square feet in size and is improved with a seasonal dwelling. 75 Dewing Rd. is bounded on its southwesterly side by Dewing Road; on its northwesterly side by lands now or formerly of Richard; on its northeasterly side by lands now or formerly of Amlaw; and on its southeasterly side by the outlet that flows from Lake Carmi to the Lake Carmi Dam. Appellants' Ex. A.

3. Both lots contain an existing seasonal dwelling and lie within the Shoreland/Recreation Zoning District ("S/R District").

4. Both lots are served by a single septic system that was installed on 75 Dewing Rd., pursuant to approval from the Town of Franklin Septic Official issued on October 27, 2003. Both seasonal dwellings were constructed pursuant to a valid building permit.

5. On February 14, 2007, the Camerons applied for a change of use permit for the 72 Dewing Rd. property. On the same day, Lake Carmi, LLC made a similar application for 75 Dewing Rd. Each application proposed to change the use of the existing single-family dwelling from seasonal use to year-round use. See Appellants' Ex. J (Appellant James Cameron discussing the proposed use with the ZBA as a "residence").

6. On April 12, 2007, the ZBA held a hearing on Appellants' applications. A second hearing and site visit were conducted on April 24, 2007. At the second hearing, the ZBA voted unanimously to deny these change of use applications. With both applications, ZBA members noted that the lots did not meet minimum size requirements.

7. On May 3, 2007, the ZBA issued a written "Notice of Decision." This Notice summarized the ZBA determinations that the lots failed to meet minimum lot size requirements and also did not conform to the Town of Franklin Town Plan.

8. The parties disagree on whether the Town Plan pertains to the pending applications and, if so, which version applies. The Town supplied a copy of the "Town of Franklin, Vermont Municipal Plan," adopted October 10, 2000 ("2000 Town Plan") as Exhibit L; Appellants provided a copy of the "Town of Franklin, Vermont Municipal Plan," adopted November 12, 2007 ("2007 Town Plan") as Exhibit K.

2

9. The parties do not dispute that the 2000 Town Plan expired by statutory directive at the time Appellants had made their application. See 24 V.S.A. § 4387(a) ("All [municipal] plans, including all prior amendments, shall expire every five years unless they are readopted according to the procedures in [24 V.S.A § 4385]."). However, the Town asserts that Appellants did not adequately preserve a challenge to the applicability of the 2000 Town Plan for our review in this appeal.

10. The regulations in effect at the time of Appellants' conditional use applications were the "Zoning Bylaws for the Town of Franklin, Vermont, Adopted by the Voters on November 5, 2002" ("Zoning Bylaws"), a copy of which was supplied to the Court as Exhibit G.

## Discussion

The parties here have rightly noted that summary judgment is an appropriate resolution of litigation only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). When considering the summary judgment motion pending in this de novo appeal, we first note that we are directed to apply the substantive standards which were applicable before the ZBA. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g). The Zoning Bylaws inform us of the substantive standards to apply in these appeals, and also assist us in forming our opinion about which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

Although Appellants have submitted identical Statements of Questions in each docket, they have advanced different arguments in support of their change of use application for each lot. Appellants argue that the change of use on 75 Dewing Rd. must be allowed because the lot is an existing small lot under Zoning Bylaws § 406. As to the property at 72 Dewing Rd., Appellants argue that the change of use may be allowed because the existing structure on the lot is a non-complying structure, the use of which may be modified under Zoning Bylaws § 418. We will therefore address each lot individually. Although we are generally confined to the issues raised by Appellants' Statements of Questions, we may be required to address the "intrinsic" questions of whether Appellants may change the use on these lots, and will not view each Statement of Questions in isolation from the ZBA action that prompted these appeals. In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190, 194-95.

3

We note at the outset that zoning bylaws are interpreted according to the general rules of statutory construction. In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 6, 175 Vt. 335, 337. "If the plain meaning 'resolves [all interpretative] conflict[s] without doing violence to the legislative scheme, there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent.'" Id. (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). If the meaning is not plain, we will determine intent by considering the whole of the bylaw, its subject matter, and its effects and consequences. Murdoch v. Town of Shelburne, 2007 VT 93, ¶ 5 (quoting Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26, 28-29). We will avoid a construction that renders any portion of the bylaws "ineffective or superfluous." Id.

All uses and structures in the Town must conform to those specifically authorized in the applicable zoning district, as set forth in the Zoning Bylaws. See Zoning Bylaws § 320(A). Similarly, all uses and structures must comply with district dimensional requirements and any other applicable provisions of the Zoning Bylaw. See Zoning Bylaws § 320(B).

Uses within each zoning district fit into three categories. Permitted uses may be approved by the Zoning Administrator alone, unless approval from another body is necessary. Id. at § 320(C)(1). Conditional uses require ZBA approval, "according to the process and criteria outlined in [Zoning Bylaws § 260.]" Id. at § 320(C)(2). Uses not listed as either permitted or conditional uses are "absolutely prohibited." Id. at § 320(C)(3).

Appellants applied to change the use on each lot from seasonal use to year-round use. Both lots are located within the S/R District. Zoning Bylaws § 330(C). The introductory paragraph of § 330(C) provides a context within which we view the regulatory provisions for that zoning district:

> The purpose of this district is to protect the historic character and environmental quality of Lake Carmi and its shoreline by maintaining the area primarily for seasonal, recreational use. The area includes private and rental dwellings which are used principally for summer residents, and conversion to year-round use will be discouraged. This district includes all lands within 500 feet of the mean water mark of Lake Carmi.

Zoning Bylaws § 330(C).

Aligned with this aspirational language, Zoning Bylaws § 330(C)(1) directs that any land uses within the S/R District, other than accessory uses and accessory structures, must obtain

4

conditional use approval.  Thus, even land uses identified as "permitted" for the district, of which seasonal and year-round dwellings are listed, must obtain conditional use approval.

The regulations for the S/R District also provide dimensional requirements that vary according to the permitted use.  Zoning Bylaws § 330(C)(3) directs that parcels containing a single family seasonal dwelling within the S/R District be at least 14,000 square feet in size; parcels containing a similar dwelling that is to be used year-round must be at least 40,000 square feet in size.  Thus, Appellants' application to change the use on each lot from seasonal to year-round use requires conditional use approval.  Zoning Bylaws § 330(C)(2).

### 75 Dewing Rd.

Under the dimensional requirements for the S/R District, the year-round use of 75 Dewing Rd. requires that the parcel be at least 40,000 square feet in size.  Id. at § 330(C)(3). 75 Dewing Rd. does not meet this requirement.  However, the Zoning Bylaws provide that qualifying undersized lots (i.e., those that fail to meet minimum size requirements) may still be developed.  Under Zoning Bylaws § 406(1), "[a]ny lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of [the Zoning Bylaws], may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements," provided the lot is at least one-eighth of an acre in size and has a minimum depth of 40 feet.  This section of the Zoning Bylaws allows undersized lots to be developed, but only inasmuch as an application proposes development "for the purposes permitted" in the zoning district.[2]

Most zoning regulations provide minimum lot sizes, often based upon the district in which the property lies.  This common zoning restriction, read in a vacuum, would exclude lots not meeting that minimum size requirement from any form of development.  Our Legislature concluded that such a broad prohibition against development of undersized lots was unwise and therefore enacted 24 V.S.A. § 4406,[3] which enabled municipalities to choose to allow development on parcels that did not conform to their minimum lot size requirements.

---

[2] The term "purposes permitted" differs from the term "permitted use."  The phrase "purposes permitted" encompasses both permitted uses and conditional uses.  In re Appeal of Wesco, 2006 VT 52, ¶ 17-21, 180 Vt. 520, 526-27.

[3] The existing small lot provisions are now codified in 24 V.S.A. § 4412(2), pursuant to the Permit Reform Law of 2004.

If the Franklin Zoning Bylaws merely established minimum lot sizes by zoning district, without regard to the intensity of the development, we would conclude that Zoning Bylaw § 406(1) would authorize the change of use that Appellants propose. The legal issue presented to us in this appeal is not that limited.

The Franklin Zoning Bylaws establish lot size requirements that are specific to the intensity of the use intended for the property. See Zoning Bylaws §§ 330(C)(3) (relating to dimensional requirements for specific uses within the S/R District) and § 340 (relating to dimensional requirements for specific types of conditional uses in any district). In our attempt to properly interpret and apply these dimensional requirements related to use, we are guided by the aspirational language contained in the first paragraph of § 330(C), establishing the purpose of the S/R District, cited above at 4. Within this context, we conclude that the Town, through its adoption of its Zoning Bylaws, sought to protect the Lake Carmi shoreline from intensive development, through its requirements that all uses and structures (other than accessory) must obtain conditional use approval, and by establishing increasingly larger minimum lot sizes for increasingly intensive uses. Zoning Bylaws § 330(C)(3) establishes that the seasonal use of a single family dwelling in the S/R District only requires a minimum lot size of 14,000 square feet, if its water supply is "off-lot," but increases its minimum lot size to 20,000 square feet if the water supply and sewer are "on-lot"; further increases its minimum lot size to 40,000 square feet if the use of the dwelling is to be year-round, and finally increases the minimum lot size to 60,000 square feet if the year-round use is of a two-family dwelling.

The Court in Lubinsky dealt with a somewhat different, but we conclude analogous, set of facts. Mr. and Mrs. Lubinsky sought municipal permit approval to convert the use of their single family home into a two-family dwelling. Lubinsky, 148 Vt. at 48–49. They did not propose an actual expansion of the size of the dwelling structure. The zoning regulations set a minimum lot size of 20,000 square feet for single family dwellings, which the Lubinsky lot did not meet. Id. at 49. However, the Lubinskys' existing single family dwelling was permitted, due to a zoning provision that incorporated the pre-existing small lot allowances of 24 V.S.A. § 4406. Id. at 48-49.

The applicable zoning regulations placed additional minimum lot size requirements for more intensive uses of properties in the zoning district in which the Lubinskys' lot was located. Specifically, multi-family dwellings were required to have a minimum lot size of no less than

6

10,000 square feet per dwelling unit. Since the Lubinsky lot was less than 20,000 square feet, the Supreme Court concluded that the Lubinskys' remodeling of their dwelling to house two families would not comply with this minimum lot requirement and could not be allowed.

In affirming the denial of the Lubinskys' permit application, our Supreme Court reasoned that the basic purpose of the Vermont pre-existing lot exception "is to provide that [undersized] lots whose existence predates the enactment of zoning but whose size does not quite comply with the new zoning law will not go to waste unused, but could be allowed to be developed for purposes consistent with uses permitted in the zone where located." Id. at 50; see also In re Appeal of Mutschler, Canning & Wilkins, 2006 VT 43, ¶ 6 n.3, 180 Vt. 501, 502 n.3 (explaining the basic purposes of a zoning bylaw addressing pre-existing small lots). But the Supreme Court continued its analysis by asking whether "the statute in question absolve[d] these small lots from all limitations that have some sort of size component?" After analysis, the Supreme Court answered its own question in the negative, with a rationale that we regard as directly on point to the Cameron and Lake Carmi applications:

> [P]laintiffs' position requires that a lot falling within the "small lot" exemption not be subject to any limitation on the number of dwelling units that can be created on that lot. In other words, any defined "small lot" not only qualifies for residential use, but also has unlimited prospects for multi-family development. This extraordinary result would place "small lots" in a situation of special and unique privilege not available to standard zoning lots in the district, and in derogation of the controlled use and growth concept of zoning.

Lubinsky, 148 Vt. at 50.

This reasoning from Lubinsky adapts well to the facts of the appeals now pending before us. Appellants' reasoning would justify converting their properties' use to a two-family dwelling, without regard to the small size of the 75 Dewing Rd. parcel. Thus, Appellants would be entitled, under their reasoning, to an even greater intensity on their 12,800 square foot lot than would be afforded a lot that initially conforms to the size requirements for a single family seasonal dwelling in the S/R District.[4] Just as the Supreme Court reasoned in Lubinsky, we cannot interpret the pre-existing small lot statute or its implementation in the Franklin Zoning

---

[4] Our hypothetical here would include a 15,000 square foot lot that was developed with a seasonal single family home with an off-lot water supply. This lot would conform to the minimum lot size requirement of Zoning Regulations § 330(C)(3) and would not be classified as a pre-existing small lot under § 406 or 24 V.S.A. § 4412(2). However, it would not conform to the minimum size requirements for a year-round single family dwelling or a two-family dwelling. We understand that an application to increase the intensity of this conforming lot would be denied as undersized under Zoning Regulations § 330(C)(3).

Bylaws to "unlimited application . . . ." Id. at 51. Rather, we adopt the Lubinsky Court's reasoning "that the statutory function is exhausted when it brings the 'small lot' within the zone as a basic unit, and does not continue to operate to give such lots expanded privileges not available to standard lots in the [zoning district]." Id.

For these reasons, we cannot enter the summary judgment that Appellants request on Question 3 from their Statement of Questions. Summary judgment is reserved only for legal disputes in which the applicable law requires no other result, thereby summarily dispensing with the need to conduct a trial, whether in favor of the moving party or against them. V.R.C.P. 56(c)(3); see also In re Appeal of Hildebrand, 2007 VT 5, ¶ 9, 181 Vt. 568, 570. We conclude that, even when the material facts are viewed in a light most favorable to Appellants,[5] the law requires that we respond to Appellants' Question 3 by stating that their request to convert the use of 75 Dewing Rd. from seasonal to year-round use must be denied, since their parcel does not conform to the dimensional requirements of Zoning Bylaws § 330(C)(3) for that more intensive use of the parcel.

In light of our legal conclusion here, we do not address Appellants' Question 1 (applicability of Town Plan) or Question 2 (applicability of Zoning Regulations § 340).

## 72 Dewing Rd.

Appellants do not contend, as they do with 75 Dewing Rd., that 72 Dewing Rd. may be developed as an existing small lot under Zoning Bylaws § 406. Appellants concede that, at 3,223 square feet (i.e., less than 1/8th of an acre), this lot does not contain sufficient acreage to qualify for treatment under § 406. Instead, they contend that the change in use from a seasonal dwelling to a year-round dwelling is authorized by the Zoning Bylaws' non-complying structures regulation, § 418.

Section 418 permits non-complying structures to continue indefinitely, subject to certain restrictions.[6] A non-complying structure may be restored or reconstructed after damage, provided that the intended use of the structure is a permitted use under the applicable bylaws and also provided that the reconstruction does not increase the degree of non-compliance which existed prior to the damage. Zoning Bylaws § 418(1). In addition, a non-complying structure

---

[5] We do not understand the facts material to this legal issue to be in dispute.

[6] The Zoning Bylaws define a Non-Complying Structure as one "not complying with the zoning regulations covering bulk, dimensions, height, area, yards, density, [and other regulations], prior to the enactment of [the Zoning Bylaws]." Zoning Bylaws § 710.

"may be enlarged or expanded, upon approval of the zoning administrator, provided that the intended use of the structure is a permitted use under the applicable zoning [bylaws] and that expansion does not increase the existing degree of non-compliance." Id. at § 418(2). Appellants' reliance on this section of the Zoning Bylaws is misplaced for two reasons.

First, Appellants do not argue that they are proposing enlargement or expansion of the structure at 72 Dewing Rd. Instead, they appear to argue that they are enlarging or expanding the use on the lot. We agree. However, Zoning Bylaws § 418(2) does not speak to enlargement or expansion of use. Second, the proposed change in use here is not a permitted use in the S/R District. The single-family, year-round use of a dwelling in this District is a conditional use. Zoning Bylaws § 330(C)(2). Therefore, Appellants could not qualify for any enlargement or expansion of their dwelling structure.

Because Appellants cannot avail themselves of § 418 and do not qualify for treatment under § 406, Appellants are barred by operation of the Zoning Bylaws from converting the use of their dwelling at 72 Dewing Rd. from seasonal to year-round use. We are therefore compelled to take the somewhat rare but permissible step of entering summary judgment against the moving party. See V.R.C.P 56(c)(3) ("Summary judgment when appropriate may be rendered against the moving party."). Given that the Zoning Regulations provide no basis for the granting of Appellants' conditional use application, even when we view the material facts in a light most favorable to them,[7] we conclude that it is appropriate to render the summary determination that Appellants' conditional use application for 72 Dewing Rd. must be **DENIED**.

Accordingly, for the forgoing reasons, it is **ORDERED** and **ADJUDGED** that Appellants' pending applications must be summarily **DENIED**.

This completes the current proceedings before this Court in each of the pending dockets. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 23rd day of June, 2008.

_____
Thomas S. Durkin, Environmental Judge

---

[7] No fact material to this legal issue appear to be in dispute.